FRANK CARDENA v. THE STATE.

No. 7533.   Decided March 28, 1923.

Rehearing Denied May 23, 1923.

1.—Murder—Jury and Jury Law—Insanity—Practice in Trial Court.

Where, upon trial of murder the trial court refused to allow defendant to ask all the jurors, if they should be taken on the jury and after the evidence was all in, there should be in their minds a reasonable doubt as to whether or not defendant was sane or insane, would they be willing to give him the benefit of the doubt and find him insane, there is no reversible error.

2.—Same—Sanity—Presumption—Rule Stated—Burden.

Sanity is presumed until the contrary is made to appear, and this is one of the issues in which the burden shifts to the accused who interposes the defense of insanity, and it is held that he must prove it by preponderance of the testimony. Following King v. State, 9 Texas Crim. App., 515, and other cases.

3.—Same—Evidence—Drug—Expert Testimony.

Where, upon trial of murder, defendant pleaded insanity caused by the smoking of a certain drug, the defendant placed on the witness stand a physician who testified that he had observed the effects of such drugs on persons, after which the facts attending this homcide were then stated to the physician as the witnesses had detailed, and he was then asked assuming said testimony to be true, would he conclude therefrom that the cigarettes smoked by defendant on the night preceding the homicide were such drug or not, to which an exception by the State was sustained, there is no reversible error.

**4.—Same—Rule Stated—Question of Fact.**

The fact of the use of such drug and the amount and the quantity of such use could be proved by witnesses who knew such facts, but it seems to be the rule that expert opinion must be limited to matters of science, skill and trade, and will not be allowed to usurp the province of the jury on matters of fact.

**5.—Same—Evidence—Confession—Rebuttal—Practice in Trial Court.**

There is nothing in the proposition that the State was allowed to introduce a confession of the defendant as part of its rebuttal testimony, even though the defendant only introduced in his behalf, while developing his side of the case, testimony bearing on his use of said drug as affecting his mental condition.

**6.—Same—Argument of Counsel—Bill of Exceptions.**

The language of the State's attorney as used in his argument set out in his bill of exceptions is not deemed so foreign to the facts as to be erroneous.

**7.—Same—Jury and Jury Law—Talesman—Special Venire.**

Where defendant complained of the fact that when the sheriff's force were sworn to bring in talesmen to complete the jury after the special venire was exhausted, they went to the room in the courthouse assigned for the use of all jurors summoned for the week for service in all the courts of the county, and there summoned from this assembly of jurors the number ordered by the court to complete the panel in the instant case, and that said jurors were not then sworn to make true answers touching their qualifications as jurors. *Held*, no reversible error in the absence of exceptions showing injury.

**8.—Same—Jury and Jury Law—Directory Statutes.**

Any irregularity or error in the selection of jurors is not reversible error, unless it be affirmatively shown by the defendant that injury has inured to him. The statutes with regard to the formation of a jury in capital cases are directory and not mandatory. Following Todd v. State, 30 Texas Crim. App., 667, and other cases.

**9.—Same—Newly Discovered Evidence.**

Where the motion for a new trial on account of newly discovered evidence was contested by the State, its refusal was not reversible error under the facts of the instant case.

**10.—Same—Rehearing—Talesmen—Practice on Appeal.**

In the absence of facts in the record showing injury to the defendant, the cause of the alleged irregularity in selecting the jurors summoned by the sheriff as talesmen, the motion for rehearing is overruled. Following West v. State, 247 S. W. Rep., 534.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty death.

The opinion states the case.

*J. M. Woods and Ed Haltom,* for appellant.—On question of selection of jurors, Murray v. State, 21 Texas Crim. App., 466; Hudson v. State, 28 id., 323; Jackson v. State, 30 id., 666; Williams v. State,

63 Texas Crim. Rep., 509; Wilkins v. State, 15 Texas Crim. App., 420; Campbell v. State, 42 Texas, 591.

*W. A. Keeling,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State.—Cited Rippy v. State, 14 S. W. Rep., 448; Conaster v. State, 170 id., 314.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Bexar County of murder, and his punishment fixed at death.

Appellant complains of the refusal of the trial court to allow him to ask all the jurors, if they should be taken on the jury and after the evidence was all in there should be in their minds a reasonable doubt as to whether or not defendant was sane or insane, would they be willing to give him the benefit of the doubt and find him insane. As we view the matter this question was so framed as not to present an issue; ''a reasonable doubt as to whether or not defendant was sane or insane,'' presents the matter so as to make it impossible to determine if the doubt inquired of be as to sanity or insanity. The use of the expression ''whether or not,'' further adds to the confusion of the question. It has never been the rule in this State that sanity must appear beyond a reasonable doubt. Hurst v. State, 40 Texas Crim. Rep. 387; Stanfield v. State, 50 Texas Crim. Rep. 69; McCulloch v. State, 50 Texas Crim. Rep. 132. Sanity is presumed until the contrary is made to appear, and this is one of the issues in which the burden shifts to the accused who interposes the defense of insanity, and it is held that he must prove it by a preponderance of the testimony. King v. State, 9 Texas Crim. App. 515; Fisher v. State, 30 Texas Crim. App. 509; Fults v. State, 50 Texas Crim. Rep. 503; Carlisle v. State, 56 S. W. Rep. 365. As we understand this record an effort was made at interposing the defense of insanity, but no witness who knew appellant prior to the homicide testified to his belief that he was insane at the time of its commission. Appellant's brother and his sister were witnesses in his behalf and neither was asked relative to their opinion as to his sanity or insanity, or whether he knew it was wrong to kill a human being. It was suggested by the defense that appellant was a marihuana smoker and that from the effects of the use of this drug he had developed a homicidal mania. It was in testimony by Dr. Dorbandt that the use of marihuana in large or excessive quantities, would produce a state of mind similar to delirium tremens, and he said that if appellant was under the influence of said drug at the time of the homicide, in his opinion appellant would not know the right or wrong of the act charged against him. To show that appellant was under the influence of said drug, his sister testified that during the night preceding the homicide appellant coughed and complained much and smoked a great deal, and that she thought he smoked Bull Durham tobacco, though she did not

know the odor of such tobacco. That what he smoked smelled very bad: Another witness testified that about four days before the killing he spent the night with appellant and that the latter smoked cigarettes that did not look or smell like good tobacco, that it looked and smelled like marihuana; that about fifteen years before appellant had asked this witness to get him some marihuana. Another witness testified that on a date not given he worked with appellant and saw appellant smoking and afterward acting queerly, and that he also saw him throw away a partially smoked cigarette which witness got and examined and it was marihuana.

In this condition of the record appellant placed on the stand Dr. Berry who testified that he had observed the effects of marihuana use on persons. The facts attending this homicide were then stated to Dr. Berry as well as the testimony of appellant's witnesses as above detailed, and he was then asked, assuming said testimony to be true would he conclude therefrom that the cigarettes smoked by appellant on the night preceding the homicide were marihuana or not. The State objected to this testimony, and to the court's refusal to allow same a bill of exceptions was reserved. We are cited to no authority and know of none that go to the extent of holding such testimony admissible. The doctor as an expert could state what condition of the mind would follow the use of marihuana. The fact of the use of such drug and the amount and quantity of such use, could be proven by witnesses who knew such facts, but it seems to be the rule that expert opinions must be limited to matters of science, skill, trade and the like and will not be allowed to usurp the province of the jury on matters of fact of which they are made the judges by our laws. Hunt v. State, 9 Texas Crim. App. 166.

There is nothing in the proposition that the State was allowed to introduce the confession of appellant as part of its rebuttal testimony, even though the appellant only introduced in his behalf while developing his side of the case, testimony bearing on his use of marihuana as affecting his mental condition. The confession of appellant made on the day of the homicide was as follows:

"My name is Frank Cadena. I live at 1112 Saunders Avenue. About three o'clock this afternoon I was sitting talking to Paulita Jiminez, the girl I shot three times, at the above address and I understand from the detectives, is dead. I killed her because I was jealous of her and loved her too much. We had not had any fuss or quarrel. This all happened in Bexar County, Texas, this 14th day of April, 1922.

(Signed) Frank Cadena.

Witnesses:

James M. Crow.
Anton Saladino.
W. L. Schleshinger.''

Some time later appellant made another confession, stating that he had not told the full truth of the matter at first, and he then made the following statement:

"Voluntary statement of Frank Cadena. I Frank Cadena, being first duly warned by J. A. N. Flores, the person to whom this statement is made, to the effect: First, That I do not have to make any statement at all. Second, That any statement made by me may and will be used in evidence against me in the trial of the case concerning which this confession or statement is made, do hereby voluntarily state as follows: My name is Frank Cadena. I live at 1112 Saunders Avenue. On April 14th, 1922, about the hour of three o'clock P. M., while I was sitting talking with Paulita Jiminez, I pull out a gun and shot her three times. I shot her because I loved her. About a month ago I went to Laredo, Texas, trying to forget her. I remained at Laredo, Texas, for one day. I had been living with her and wanted to forget her, because I could feel that I was giving in, and I was about forgetting my wife. I loved Paulita and I wanted to forget her; first thing I knew I fell in love with her. She was my sister-in-law. That is why I wanted to forget all about her. We had no fuss or quarrel at the time of the shooting. She asked me on several times not to quit her as she could not stand it; my wife is at present in the hospital.

(Signed) Frank Cadena."

Either or both these confessions were entitled to go before the jury, not only as evidence of appellant's guilt of the crime, but as rebutting the theory of a homicide committed in a state of insanity.

The language of the State's attorney as used in his argument set out in bill of exceptions No. 5 is not deemed by us so foreign to the facts as to be erroneous. The matters stated by appellant in his second bill of exceptions, supra, appears to justify such argument.

There is serious complaint of the fact that when the sheriff's force were sworn to bring in talesmen to complete the jury after the special venire was exhausted, they went to the room in the courthouse assigned for the use of all jurors summoned for the week for service in all the courts of the county, and there summoned from this assembly of jurors the number ordered by the court to complete the panel in the instant case; said complaint also presenting the further fact that when the jurors so summoned were brought before the judge trying this case for examination touching their service and qualification as jurors herein, they were not then sworn to make true answers by said judge or anyone under his direction. It is made to appear that after four jurors had been selected from this number thus summoned, and the full jury thus completed had been sworn, appellant's counsel called the attention of the trial court to the fact just mentioned, and stated that any verdict and judgment rendered against his client would be protested because said jurors had not been sworn

to answer questions, by the judge of this court. No exception seems to have been reserved, and no further objection was made to the service of said jurors, nor was any affirmative action asked on the part of the trial court. The question was raised in the motion for new trial.

Bexar county is under the operation of the interchangeable jury law, which is Chapter 78, Acts Regular Session of Thirty-fifth Legislature, under which statute jurors for all the courts of the county are sworn and tested as to their qualifications and are sent to an apartment assigned to them in a convenient place, and from this number of jurors men are called to the various court rooms for service in cases when reached. From this assemblage of jurors, as above stated, the officers summoned the men from among whom the four necessary to complete the instant jury were selected. It seems agred that all of said jurors had been sworn and tested by the judge of another of the district courts of Bexar county than the one trying this case. Article 674, Vernon's C. C. P., which prescribes the oath to be administered to jurors preliminary to their voir dire examination, has been held merely directory. Murray v. State, 21 Texas Crim. App. 466; Hudson v. State, 28 Texas Crim. App. 323; Jackson v. State, 30 Texas Crim. App. 664. In Todd v. State, 30 Texas Crim. App. 667, appears the following:

"But in case we concede any irregularity or error in the ruling cf the court as above complained of, it is not an error of a reversible character, unless it be affirmatively shown by the defendant that injury has inured to him on account of the failure to observe any of the regulations prescribed by the statute for the organization of the jury summoned under the special venire facias. The statutes with regard to the formation of a jury in capital cases are directory, and not mandatory; and where substantial compliance has been observed, no irregularity or failure upon the part of the court to observe a literal compliance with said statutes will be held reversible error, unless injury to the defendant is shown."

No claim is made in this case that appellant was not present and not aware that these men were being tested without having been sworn by the trial judge of the court below, to make true answers. No objction was made to said jurors being tested in the manner and at the time and place that they were and not until said jurors had been accepted and sworn to act as jurors in this case was anything said concerning this matter. If any effort was made to get rid of these four jurors it does not appear in the record. No effort was made in the motion for new trial to show that any one of the jurors had answered falsely in the examination given them, or that any of them were hostile to the appellant, or that he suffered any injury from their presence on the jury trying him. It is said in Article 22 of our Code of Criminal Procedure that the accused may waive any right of his

except that of trial by jury in a felony case. It is held in Buie v. State, 1 Texas Crim. App. 452; Lester v. State, 2 Texas Crim. App. 432; Ray v. State, 4 Texas Crim. App. 450; Yanez v. State, 6 Texas Crim. App. 429; Castanedo v. State, 7 Texas Crim. App. 582; Caldwell v. State, 12 Texas Crim. App. 302; McMahon v. State, 17 Texas Crim. App. 321, and Lowe v. State, 88 Texas Crim. Rep., 316, 226 S. W. 674, that the acceptance of a jury by the defendant is a waiver of his right of objection to the manner of its organization. In our opinion the matter complained of is without merit.

Appellant further presents the proposition that he should have been granted a new trial because of newly discovered evidence. The refusal of the motion for new trial is not urged as error in the brief filed for appellant; but in view of the extreme penalty inflicted we have carefully considered this matter also. The motion is contested by the State, and its refusal does not seem to us erroneous. Physicians who examined appellant at the time of his trial said that in their opinion he was then normal; which fact being true, appellant must have been in condition to have informed his counsel of any testimony favorable to his defense which was then within his possession. The facts set up as newly discovered were necessarily within his knowledge, and if he failed to disclose them to his attorneys it was his misfortune. Said new evidence was of the fact that appellant had syphillis. Not only was this not newly discovered evidence within the contemplation of our law, but we do not think it of that materiality which would call for the granting of a new trial, and which would make it appear that the trial judge had abused his discretion in the matter. The confessions of appellant seem to us to be so cogent upon the question of his understanding of the nature of the crime he was committing as that when coupled with the testimony given on this point, seem to entirely support the proposition that he was sane at the time. Appellant's wife had been in the hospital for some time, and the young woman whom he shot was his wife's sister. In his confessions he states that he was in love with her and that this fact so stirred him up as to lead him to kill her.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

### ON REHEARING.

#### May 23, 1923.

HAWKINS, JUDGE.—Our former opinion is attacked upon the ground that we were in error in holding not reversible the alleged irregularity in selecting the four jurors summoned by the sheriff. On account of the severe penalty inflicted we have again examined the question. We are confirmed in the views heretofore expressed, It would be profitless to write again at length. The record presents no facts from which we could with reason apprehend that injury may

have resulted to appellant. We think this one of the instances where accused will be held to have waived an irregularity in the selection of a jury when no objection is made at such a time that the matter complained of might have been corrected. Where no effort is made to show injury resulting from such irregularity we think it beyond our province to presume injury under such circumstances. Very much the same question was considered in the recent case of West, et al. v. State, 93 Texas Crim. Rep. 288, 247 S. W. Rep., 534, where it was omitted to administer the oath to the sheriff when directed to summon additional jurors.

The motion for rehearing is overruled.

*Overruled.*